May it please the court, Lawrence Rolfing on behalf of Linda Taylor, the appellant in this case. This is a social security disability case. Linda Taylor applied for widow's benefits and SSI as part of that process. She attended a psychological consultative examination at the request of the state agency and an internal medicine consultative examination at the request of the state agency. When it came time for the hearing, the representative from Ms. Taylor asked the vocational expert two hypothetical questions. One was based upon the opinion of Dr. Lessinger, the psychologist, and one was based upon Dr. Young, the internist. And in both hypothetical questions, the vocational expert's response would have led to a conclusion that Linda Taylor did in fact suffer from a disability as that term is defined under the Social Security Act. The administrative law judge didn't state any reasons for rejecting Dr. Lessinger's opinion and didn't state any reasons for rejecting Dr. Young's opinion. Those opinions are... According to record, did the ALJ reject Dr. Lessinger's opinion? He did not reject it. Well, I thought you said he did. If I said that, Your Honor, it's because I woke up way too early this morning. He did not reject Dr. Lessinger's opinion. He never said anything derogatory or critical of Dr. Lessinger's opinion. And in fact, the commissioner has taken the position here and in the district court that the opinion of Dr. Young is not inconsistent with the ALJ's conclusion. I was talking about Young or Lessinger. I'm talking about both of them. But Lessinger is the psychologist, Your Honor, and they're administered psychological testing, observed what Dr. Lessinger perceived as contradiction in Linda Taylor's behavior, assumed those facts in expressing his opinion, and stated that she would not be able to function where demands were made upon her. I'm trying to figure out what the error is that you are telling us nullifies the ALJ's determination. The ALJ is obligated to address the evidence that's favorable to the claimant in a specific and legitimate fashion. Dr. Lessinger expressed opinions that we know, reviewing the record as a whole, are favorable to the claimant, would lead to a conclusion that she is disabled. What specifically? What is the specific disability that Dr. Lessinger brought to the attention of the ALJ that the ALJ did not include? At page 324 of the administrative record, Dr. Lessinger states that Linda Taylor suffers from a major depressive disorder, a personality disorder not otherwise specified with borderline traits, and gives her a global assessment of functioning of 45. Okay, now in terms of disability, what did he say about her ability to work with those conditions? Yes, Dr. Lessinger stated that in terms of the… I'm looking for the impairment. Yeah. And difficulties in social functioning, paragraph 2, under functional limitations, she was angry and irritable with the examiner, but was polite and pleasant with people she called for a ride. Much of her irritability appeared to be due to feelings of failure during the evaluation process. Right. Difficulties of concentration, persistence, and pace. She focused on her emotional distress and physical condition, such that concentration is negatively affected. Right. Did you ever, I mean, I'm looking for a bottom line in terms of ability to work. Yes. Or residual functional capacity. On the next page, page 325, number 2, respond appropriately to coworkers and supervisors and the public. She would not do well interacting with others, given her irritability and negative attitude towards others. Right. And the last sentence of paragraph 6, it is apparent that she has great emotional distress and would benefit from counseling such as others. Right. So now what's the error? What did the ALJ do that was wrong in terms of reviewing those statements you read? The ALJ ignored them, and that's wrong. Well, I asked you that, and you said he didn't ignore them. He summarized them, but he didn't state any reasons for rejecting them. He did not state a single reason for rejecting Dr. Lessinger's opinion. How do you know he rejected them? On page 492 and 490, 493 of the administrative record, counsel for Ms. Taylor asked the vocational expert to assume the precise limitations that Dr. Lessinger articulated on pages 324 and 325 of the administrative record, and the vocational expert stated that she could not perform her past relevant work and would not be able to perform other work in the national economy. 492 and 493. 492 is the opinion of Dr. Young, and 493 is the opinion of Dr. Lessinger. And in closing argument, counsel for Ms. Taylor said, The hypotheticals I gave were based on Dr. Young's assessment and also Dr. Lessinger's assessment if this lady's limited sedentary work she would grit out. It's a clear statement put forth to the ALJ. The opinions of Dr. Lessinger lead to the conclusion that this woman is disabled based on the vocational evidence. The ALJ didn't have to mirror the attorney's hypothetical. The ALJ merely had to include within his hypothetical the limitations that the doctors gave, right? Right. So are you saying that the ALJ's hypothetical did not include the limitations that the doctors had? I'm saying that the ALJ's findings did not include what the doctor had. What about the hypothetical? Well, the hypothetical mirrors the ALJ's findings and are similarly defective, but we have that deficiency in the record is cured by cross-examination of the vocational expert by counsel who clearly stated that put forth the limitations framed by Dr. Lessinger to the vocational expert, assuming her age, education, and work experience, and the vocational expert said she can't perform her past relevant work, which satisfies her Step 4 burden of proving a prima facie case, and stated that she could not perform other work existing in the local or national economy, and that satisfies the burden of persuasion at Step 5 of the sequential evaluation process. And the ALJ, despite that clear indication in the record, did not address the opinions of Dr. Lessinger in any meaningful manner. So you're saying by not rejecting those opinions and not discussing them in any way, he should have accepted them or is what he should have done, is what he was really doing. Well, accepting them but rejecting them is the ultimate ruling. That's correct. That's correct, Your Honor. So accepting them on one hand and rejecting them on the other hand. Except we don't have a rejection. He didn't say he rejected them. Then credit Dr. Lessinger's opinion as true. If the ALJ didn't feel fit to reject the opinion and credit it as true, this Court clearly has the discretion under 405G to credit that opinion as true. But the ALJ credited it. He just didn't say that it was disabling. He credited what the doctor said, but in his view, that didn't amount to a disabling condition. When an administrative law judge has the precise limitations posed to the vocational expert, and the vocational expert says that the individual can't work, whether it's Dr. Young or Dr. Lessinger. That was the attorney. That was the attorney who posed the question, and his question did not mirror the doctor's. He added more limitations in. Your Honor, I could not disagree more. I understand. And, in fact, with respect to Dr. Young, which is, I think, the physical limitations, Dr. Young said that Linda Taylor was limited to a desk job with no prolonged standing and walking. And the ALJ stated that Linda Taylor could do six hours of standing and walking and a work day. The rulings, Social Security ruling 8310 and 8312, define light work as requiring prolonged standing and walking. And yet this doctor, who was hired by the state agency to render Social Security evaluations, said this person cannot do prolonged standing and walking. Prolonged is a term of art. And I'm going to assume that the administration does not hire incompetent physicians, that they know what the words mean in the context in which they're writing their reports. This doctor, Dr. Young, was speaking the language of the Social Security Administration. He said no prolonged standing and walking. The vocational expert, who also is familiar with the administration's terminology, said no prolonged standing and walking. That's sedentary. And under Rule 201-14 of Appendix 2, Title 20, CFR Part 404, Subpart P, Linda Taylor was closely approaching advanced stage. If she's limited to unskilled sedentary work, she wins. She gets benefits. She's disabled because she's unable to engage in substantial gainful activity. Not gainful activity, the term the district court used, but substantial gainful activity, which implies a much greater degree of functioning. I'm out of time. You are. Thank you. Good morning. My name is Mark Winn, appearing for Michael J. Astrew, Commissioner of Social Security. And the ALJ probably gave more weight to four other doctors whose opinions contradicted those of Dr. Lessinger. Did the ALJ reject Dr. Lessinger's opinion? Gave Dr. Lessinger's opinion ultimately less weight than those of the other physicians in the record. So that much is clear from the findings of the ALJ. The ALJ first in its decision summarized Dr. Lessinger's report, but ultimately found that he was going to give more weight to the state agency physicians who reviewed the medical evidence of record, and also to another examining physician who had found no cognitive impairment of any kind. First, it's also important that the reviewing agency physicians, Dr. Morello, Dr. Ikawa, they found or they noticed some rather striking peculiarities in Dr. Lessinger's opinion itself. For one, even though during this examination she was angry for two and a half hours straight, the examiner noticed that after the examination she was calm, polite, and pleasant to the people who she called for a ride after the examination. That's something that the state agency physicians noticed, and something that as public policy we want these state agency review physicians to notice. Another thing they noticed was her lack of cooperation during the examination. One test that this doctor described shows this lack of cooperation as an example. Apparently there's a psychiatric test where you hold a picture with a missing element in it and at that point they're supposed to identify it. Dr. Lessinger noted that the patient would immediately say, I can't do that. She would quickly not be able to identify it. But then, even though the doctor kept the stimulus in front of the patient, she was able to identify what was missing. And all this is contained in Dr. Lessinger's report. It should be page 324 of the administrative record. Well, what did the ALJ do with the Lessinger report? That's what seems to be the mystery. The ALJ said that he gave more weight or he deferred to the analysis of the state agency physicians who did review Dr. Lessinger's report. And this is the normal course of events that the state agency does, in many cases, send individuals to a consultative exam like Dr. Lessinger, and then those people would then, that evidence from Dr. Lessinger as well as other evidence in the record, would go to a state agency medical reviewer like Dr. Murillo or Dr. Ikala, and they would analyze that record. And the ALJ said that he was taking their analysis over the medical opinion evidence as well as his own independent view of the record. So these two doctors you just mentioned, they didn't actually see the patient. They looked at Dr. Lessinger's report. Yes, they did. As well as the other evidence of record. But the record also can... That's not responsive to what the ALJ did. I mean, the ALJ has to do something where a doctor actually examines the claimant and says this claimant has real problems. The case law, Magalanes v. Bowen, says that the duty for even rejecting a treating physician is met when you summarize the medical findings, state your findings of the medical evidence and make findings thereafter. And that's what the ALJ did. He did include a detailed summary of Dr. Lessinger's report. Where is that in his decision? That's on page 17. And another peculiarity... Dr. Lessinger, you said? Yes, near the bottom of page 17, the second... Oh, when he talks about the psychological evaluation? Yes, that's on page 17. And it's page 18 when he states that based on his independent view of medical evidence, including the evidence he summarized of Dr. Lessinger, I submit, that he was ultimately going to go with what the state agency medical consultants recommended. And besides the summary and his findings, we also have the fact that the ALJ put it to other psychiatric evidence which very much contradicted with Dr. Lessinger's ultimate conclusions. And the ALJ says this expressly on page 18 of the record, where it says, in this case, the objective evidence and other doctor comments are not consistent with total disability. Those other physicians include the state agency review physician as well as an examining physician, Dr. Land. And his report, Dr. Land's, is 272 to 293. And his opinion ultimately was that the claimant did not have cognitive impairment that would prevent her from doing her past relevant work. He stated in 272 of the record that the claimant could return to her past relevant work without restrictions. And Dr. Land did see the claimant face-to-face. And he was also, so he was in the same position, at least as of Dr. Lessinger. And he also had the benefit of a battery of psychological tests rendered by another physician, Dr. Morgenthaler, who rendered the opinion that this would be page 215. And 288 is where Dr. Land discusses that. That's where Dr. Morgenthaler, after reviewing the, or interpreting the psychological testing, found that there was no cognitive impairment. Or that wasn't demonstrated by the testing. And the claimant does cite some case law saying that, just two cases, Thomas and Lester, for the proposition that state agency physicians cannot look at examining physicians' findings and come to a different conclusion. But those cases don't say that. In contrast, or in fact, Lester cites with approval a case very similar to this one where it says, this would be Lester v. Tater, 81 F. 3rd, 821. And this is, this would be 831 of Lester, where the Lester court cites with approval the fact that, and upheld the ALJ's decision to reject examining psychologists' functional assessment that conflicted with his own written report and test results. I'm sorry. Counsel, I just don't see, I don't see where you say he doesn't reference the, what's his name? Lessengers. Lessengers. By name. By name. You say that the consultative psychological evaluation, he describes that on 17. I don't see where he ever explains why he's giving it less weight or why he's accepting somebody who never saw him over that, or I don't see where that's explained here. Can you just point me once more to where that is? Where we have that is, explanation is on 18, we do have the fact that. Can you just sort of tell me a paragraph, roughly where? Yeah, over on page 18, at the very bottom, and this is what the ALJ, it's a encapsulation of the medical record. It's, in this case, objective evidence. And other doctor comments are not consistent? That is the sole reference to the, to the psychologist who actually evaluated her in Lessenger? Yeah. And in addition to that, we do have. Well, he didn't really reject Dr. Lessengers. I mean, I'm not sure that that's a fair characterization of what the ALJ did. I don't know why you say he rejected Dr. Lessengers, or gave it less weight, because he does, he never says that. It doesn't say that expressly. The findings, and the ALJ's findings do, in fact, take elements of everybody's opinion, and his own findings based on. Because Dr. Lessenger never actually said she was disabled, that she was unable to work or any of that. So why would he reject? I don't understand your argument. Yeah. It's, in actuality, the ALJ looks at all the evidence, including Dr. Lessengers' report, and makes findings based on all these findings. He does say that he does give more weight, at the end of the day, to the state agency positions who looked at the record, including Dr. Lessengers' report. Okay. I think you've used your time. Are there any further questions? Thank you. Mr. Porter has additional questions. I'm not going to beg for more time. Thank you. There don't appear to be any.
judges: Collins, Schroeder, Rawlinson